FENNER A. IRONS *vs.* NATHANAEL R. GREENE.

MAY 29, 1911.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Master and Servant. Due Care. Contributory Negligence in Law.*

A machinist accustomed to the workings of machines though claiming he was not acquainted with windmills, sent aloft sixty feet to ascertain and remedy a defect in the operation of the windmill, with a wind blowing and the mechanism in motion, realising the necessity of first lashing the wheel and having the means at hand for lashing it, is bound to a degree of care commensurate with the dangers to which he was exposed and his admission that he knew the piston rod would work if the mill was not lashed is evidence of such contributory negligence in not fastening it as suffices in law to bar recovery.

TRESPASS ON THE CASE for negligence. Heard on exceptions of defendant and sustained.

Blodgett, J. At the conclusion of the trial of this action on the case for negligence the defendant moved for the direction of a verdict which was denied, and to such denial the defendant duly excepted, and after verdict for the plaintiff the cause is brought here on defendant's exception to such denial.

The evidence disclosed that the plaintiff was a machinist by calling and that he was employed by the defendant to attend to various matters connected with the defendant's hotel, among those specified in the defendant's letter specifying his duties being to "attend to the windmill and see that the water supply is all right and the ice plant in order and attend to the gas plant when necessary." The plaintiff was injured while repairing the windmill above referred to, which stood about sixty feet above the ground and had been damaged in some way by a high wind so that its action could not be controlled from the ground. The plaintiff was instructed to ascertain the cause of the trouble and to repair it. He ascended the post which supported the windmill, in which there were spikes driven at intervals on the sides thereof, until he reached the platform directly beneath the wheel, which extended like a floor on the frame work of the mill, but having a "V" shaped opening on one side to admit one to ascend and to descend therefrom in case of needed repair. The wheel was in motion by the wind then blowing, and this is his testimony: (p. 25) "Q. 164. Then at the time you went to Greene's Inn to inquire about this job, you knew that a part of your duties and the most they wanted was to take care of and attend to a windmill, didn't you? A. Yes." (p. 26) "Q. 174. You are a machinist by trade? A. Yes. Q. 175. And know something about machines, don't you? A. Yes. Q. 176. And the workings of them? A. Yes." (p. 29) "Q. 203. Now when Mrs. Greene—you had some conversation with Mrs. Greene in the office just prior to your fixing the mill? A. Yes. Q. 204. And what was that? A. She told me that I ought to fix it right off as it was liable to blow away." (p. 33) "Q. Now you say that you took up the plyers and a hammer, a wire and a rope? A. Yes. Q. What did you take the rope for? A. To tie the windmill. Q. To tie the wind-

mill? A. Yes. Q. Who told you to take it? A. I took it myself. Q. Nobody told you to take it? A. Nobody. Q. Did you think it was necessary to lash that mill before you went to work on it? A. I had never gone up there; if it wasn't—Q. You knew it was necessary? A. Anybody would know it, if the wind changes the windmill will swing. A. And you knew that if you didn't lash that mill that that piston rod would run up and down, would work? A. Yes. Q. And if you did lash it, it wouldn't work? A. Well, if the mill was shut off it wouldn't. Q. If you lashed it tight enough the piston rod wouldn't work, would it? A. No." (p. 41) "Q. When you tied it would it work any? The mill operating just the same? A. The wheel was working. Q. Do you mean to say that you tied that mill and it still kept working? A. I tied the mill so that it wouldn't swing around, I didn't tie it so that it would stop working." His claim is that, in attempting to descend through the "V" shaped opening in order to procure additional tools, as he stooped to place his right foot on the first spike below the said opening he leaned upon a piece of board about four and one-half inches wide, seven-eighths inches thick and situated three feet six inches from the post to its outer edge, and that as he felt it giving way at one end, he threw one hand around the post supporting the wheel, between the pump-rod or piston and the post, and that a joint or coupling on said rod in its downward stroke crushed his hand and caused the injury of which he complains. He did not fall from the platform but descended in safely otherwise than as above described.

It is evident that his injury was caused by the motion of the pump-rod, as he himself claims, and that if said rod had been stationary he would not have been hurt.

(1) A machinist accustomed to the working of machines, though claiming he was not acquainted with windmills, sent aloft to a height of sixty feet to ascertain and remedy a defect in its operation and control, with a wind blowing and the whole mechanism in motion, and at two o'clock in the afternoon of a June day, and realizing the necessity of first lashing the wheel, as well as having the means at hand for securely lashing the

same, must be held subject to the rule laid down in *Judge* v. *Narragansett Electric Lighting Co.*, 21 R. I. 128, viz.: "In these circumstances he was bound to the exercise of a very high, if not the highest, degree of care, or, in other words, to a degree of care commensurate with the dangers to which he was exposed." His admission that he knew that the piston rod would run up and down if the mill was not properly lashed is evidence under the circumstances of this case of such contributory negligence in not fastening it, as suffices in law to preclude his recovery.

The defendant's exception is sustained and the plaintiff may show cause on June 5, 1911, at ten o'clock, A. M., why judgment should not be entered for the defendant.

*T. P. Corcoran*, for plaintiff.

*Frederick C. Olney*, for defendant.